**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 97-50699
Summary Calender
_____


ROBERT A. LEVY,

Plaintiff-Appellant,

VERSUS

GANNETT COMPANY, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Western District of Texas
(EP-97-CV-79)
_____

May 27, 1998

Before JONES, SMITH, and STEWART, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]


Robert Levy sued Gannett Company ("Gannett") for publishing an edited version of his letter to the editor of the *El Paso Times*. The district court dismissed for failure to state a claim. Finding no error, we affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

Levy sought the nomination for a congressional seat in a primary election held on March 12, 1996. On February 29, Levy faxed the following letter to the *El Paso Times*:

> I read with interest the letter of Jack Koehn in the Times, (No Vote a Good Vote) and I agree with him concerning the influence of money in politics.
>
> It is tempting to think of opting out of the system, but I don't believe that solves anything. The answer is to encourage and vote for those candidates who are working to get money out of politics by not accepting campaign contributions.
>
> The motto of my campaign for Congress is "Money-Free and No Bull Politics." I accept no campaign contributions, and I anticipate that my total expenses after the filing fee and up to the primary will be $2500 or less.
>
> If my campaign succeeds, it would send a loud message to Washington and might give other like minded legislators the courage to vote to get the money out of politics.

In the primary election, Levy received 1.2% of the vote.

A week after the primary, the *Times* published Levy's letter. The text was substantially the same, except for the final sentence, which had been edited to read: "My campaign did not succeed in its primary objective, but it did send a loud message to Washington and might give other like-minded legislators the courage to vote to get the money out of politics." Levy promptly asked the newspaper to publish a retraction and apology. The paper suggested that he submit a letter to the editor. Levy declined and sued.

Levy's complaint alleges three theories of recovery: libel,

2

breach of contract, and invasion of privacy. He seeks $150,000 in compensatory damages and $1 million in punitive damages. He appeals the dismissal and the refusal to permit him to amend his complaint.

We review *de novo* the dismissal for failure to state a claim. *Jackson v. City of Beaumont Police Dep't*, 958 F.2d 616, 618 (5th Cir. 1992). Dismissal should be granted only when it appears that no relief could be given under any set of facts that could be proven consistent with the allegations. *Id*. We review the refusal to permit amendment for abuse of discretion. *Shivangi v. Dean Witter Reynolds, Inc.*, 825 F.2d 885, 890 (5th Cir. 1987).

## II.

Levy claims that the *Times* libeled him by editing his letter's final sentence. Specifically, he argues that "the newspaper cleverly twisted [his] letter around to make it look as if [he] had submitted it after the election, with delusional concerns about his own importance." He claims that he was damaged because the edited epistle "destroyed [his] reputation for political astuteness in the community and compromised his ability to present himself in the future as a candidate for public office."

In *Musser v. Smith Protective Servs., Inc.*, 723 S.W.2d 653 (Tex. 1987), the court explained that in a libel action, "the initial question for determination is a question of law to be

3

decided by the trial court:  were the words used reasonably capable of a defamatory meaning."  *Id*. at 654 (footnote omitted).  The trial court must "construe[ ] the statement as a whole in light of surrounding circumstances based upon how a person of ordinary intelligence would perceive the entire statement."  *Id*. at 655.

The district court determined that Gannett's "statement" was incapable of a defamatory meaning as a matter of law.  We agree that, given the circumstances, a person of ordinary intelligence could not perceive the edited sentence as defamatory.  The court properly dismissed Levy's libel claim.


III.

Levy's breach of contract claim is premised on language appearing in the *Times* concerning letters to the editor:

> The *El Paso Times* accepts letters dictated over the phone, by mail or facsimile.  Space limitations require that letters be edited and condensed.  We recommend letters be less than 200 words.  Letters over 200 words will be edited or may be rejected.  Writers and callers must provide a full name, street address and daytime telephone number at which they can be reached. Addresses and telephone numbers are not published.  Letters that cannot be verified will not be used.

Levy argues that this language constituted an offer to enter into a unilateral contract, and that a contract was formed when he submitted his letter.  He contends that Gannett breached this contract by failing to verify the language of the edited letter prior to publication.

4

The district court properly concluded that this language did not constitute an offer. Gannett manifested no intent to enter into a legally binding contract. There was no consideration exchanged, nor was any type of mutual obligation imposed. "[A] contract in which there is no consideration moving from one party, or no obligation upon him, lacks mutuality, is unilateral, and unenforceable." *Texas Farm Bureau Cotton Ass'n v. Stovall*, 253 S.W. 1101 (Tex. 1923). The language appearing in the *Times* simply explains the requirements for submissions to the newspaper; it cannot reasonably be characterized as an offer to the general public to enter into unilateral contracts. The district court did not err in dismissing the breach of contract claim.

IV.

Levy claims that the *Times* invaded his privacy by appropriating his personality for commercial use. The use to which his name was put, he alleges, was twofold: The *Times* sought "to sell more newspapers based on 'news' that a candidate had made ridiculous statements about his own importance" and "to prevent [Levy] from again making a meaningful run for public office."

It is uncertain whether a cause of action for commercial appropriation even exists in Texas, but we need not explore this uncharted ground to decide this case. The district court characterized as "patently absurd" the idea that the *Times* edited

5

Levy's letter for commercial gain. We conclude that this was a charitable assessment and that Levy's claim was properly dismissed.

V.

Levy claims that the district court abused its discretion in refusing to permit him to amend his complaint. He argues that, given the opportunity to amend, he would have alleged malice, and special damages, and that he was subjected to public ridicule for the edited sentence. The parties dispute whether Levy actually requested leave to amend, but even assuming that he did, the district court did not err in denying his request. Although FED. R. CIV. P. 15(a) provides that leave to amend "shall be freely given when justice so requires," leave to amend is not automatic. We may affirm denials of motions to amend when amendment would have been futile. *Avatar Exploration, Inc. v. Chevron, U.S.A., Inc.*, 933 F.2d 314, 321 (5th Cir. 1991). That was the case here. We "sympathize with [Levy's] feelings of aggravation about this incident, but life is full of aggravations of all sorts." *Sorenson v. Ferrie*, 134 F.3d 325, 331 (5th Cir. 1998) (DeMoss, J., concurring).

AFFIRMED.

6